## ANTON TEXTOR *vs.* WAITMAN L. ORR, Trustee.

*Pledge—Transfer of Possession—Equitable Mortgage or Lien Not Recorded—Rights of Prior and Subsequent Creditors—Assignment For Benefit of Creditors—Powers of Assignee.*

In order to create a valid pledge of personal property a transfer of the possession of the thing pledged to the pledgee or to a third party for his benefit, is essential.

A promise to execute a mortgage of certain property or a defectively executed or unrecorded mortgage, creates an equitable lien upon the property binding the conscience of the mortgagor and enforceable in equity against him. A pre-existing indebtedness is a sufficient consideration to support such mortgage.

Such equitable mortgage or lien is also enforceable against parties who claim under the mortgagor without an equity superior to that of the creditor holding the lien and against unsecured creditors of the mortgagor who were such at the time the lien was created, but is not valid as against subsequent creditors or *bona fide* purchasers for value.

An assignee for the benefit of creditors so far represents the creditors of the assignor who became such after the creation of an equitable lien or defective mortgage as to contest claims against the estate in his hands made to their prejudice.

A debtor agreed in writing to give certain hoops to A., a creditor, as security for the payment of promissory notes, which represented a pre-existing indebtedness, and stipulated that the hoops should be the property of A. in case the notes were not paid at maturity. The hoops remained under the control of the debtor and the agreement was not recorded under the statute requiring all bills of sale or chattel mortgages to be recorded when the debtor remains in possession. Subsequently the debtor made a general assignment for the benefit of creditors, the notes being unpaid. A. claimed that under the agreement he was entitled to a first lien on the hoops which had come into the possession of the assignee. *Held*,

1st. That the agreement between A. and the assignor created an equitable lien on the property which was enforceable against the assignor and his creditors who were such at the time the agreement was made and against the assignee as the representative of such creditors, but that the same was not valid as against subsequent creditors of the assignor.

2nd. That in the distribution of the proceeds of the sale of the hoops,

A. is entitled to priority over creditors who were such at the date of the agreement while creditors who became such thereafter were entitled to share equally.

Appeal from an order of the Circuit Court for Baltimore County (BURKE, J.), passed upon the petition of Textor in the matter of the trust estate of D. R. McCauley, by which it was adjudged: 1st. That the hoops mentioned in the petitioner's exhibit to the number of one hundred and eighty-two thousand, passed into the possession of Waitman L. Orr, trustee under the deed of trust charged with the lien created by said exhibit, and that said lien, to the extent of the petitioner's claim, is valid as against all creditors of the said McCauley individually, and as surviving partner, who were such at the time of the making of said paper, that is to say, April 2nd, 1896, or who became such with notice of such lien, and that in the distribution of the proceeds of the sale or use of said hoops by the trustee, the claim of the petitioner shall be given priority as to such hoops. 2nd. That the equitable lien against such hoops created by said paper, does not constitute a valid lien as against creditors who became such subsequent to the date of said paper, and without notice of such lien, and in the distribution of the funds in the trustee's hands, the claim of the petitioner is entitled to be paid only as a general and unsecured claim, as to claims of creditors who became such after April 2nd, 1896, and without notice of the existence of such paper."

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, ROBERTS, BOYD and RUSSUM, JJ.

*Osborne I. Yellott* (with whom was *John I. Yellott* on the brief), for the appellant.

The decree appealed from declares the paper-writing sufficient to create an equitable lien as between the parties, though not acknowledged or recorded, and although no delivery of the property. The form or nature of an agreement to create a lien is immaterial, for equity looks rather at the final intent and purpose than at the form. 3 *Pomeroy*

*Eq. Juris.*, sec. 1237 ; *Alexander* v. *Ghiselin*, 5 Gill, 138, and notes. It is quite clear that it was the intention of the parties to the agreement to create a lien upon the hoops. The conscience of the pledgor became bound and the paper would have been enforced by a Court of Equity as between the parties. *Dyson* v. *Simmons*, 48 Md. 214.

Conventional trustees claiming under a deed of trust, for the benefit of creditors, cannot impeach a prior conveyance, executed by his grantor, even though that conveyance be fraudulent against the grantor's creditors. They stand in the shoes of the assignor and take the property subject to all the equities against the assignor. The trustee can assert no right or claim that could not be set up by his assignor. *Brown* v. *Deford Co.*, 83 Md. 310; *Ratcliff* v. *Sangston*, 18 Md. 391 ; *Devries* v. *Hiss*, 72 Md. 564 ; *Riley* v. *Carter*, 76 Md. 610 ; *Tyler* v. *Abergh*, 65 Md. 20 ; *Benesch* v. *Weil*, 69 Md. 281 ; *Foley* v. *Bitter*, 34 Md. 654.

*Albert S. J. Owens* (with whom was *J. Fred. C. Talbott* on the brief ), for the appellee.

It is true, a trustee under a deed of trust is not a purchaser for value. *Tyler, Trustee,* v. *Abergh*, 65 Md. 182. But he so far represents the creditors, as to contest for their benefit the claims of those who assert rights under defectively executed conveyances. *6th Ward Building Association* v. *Wilson*, 41 Md. 506. And it is his duty to resist claims, founded in fraud, which would operate to the prejudice of *bona fide* creditors. *McIntosh* v. *Corner*, 33 Md. 598. The agreement relied upon is not a chattel mortgage, nor is it a bill of sale. It was never acknowledged before an officer authorized by the law of this State to take acknowledgments, there is no affidavit as to the consideration ; the paper was never recorded, and if it had been, no advantage would have been gained thereby.

The hoops were not *pledged* as security for the payment of the debt. There was neither actual nor constructive delivery to Textor, the evidence shows the custody of the

building, the right of access to the hoops, the power to take away such as McCauley needed, remained in him. A *pledge is a deposit* of personal effects not to be taken back but upon a payment of a certain sum, by express stipulation to be a lien upon it. *Lucketts* v. *Townsend*, 3 Texas, 119; *Jones* v. *Smith*, 2 Vesey, Vt. 370; *Dungan* v. *Mut. Ben. Life Ins. Co. of N. J.*, 38 Md. 242. *Delivery* is essential to constitute a *pledge.* *Walcott* v. *Keith*, 22 N. H. 196; *First National Bank* v. *Wilson*, 38 Ga. 391; *Fletcher* v. *Howard*, 2 Aitkin, Vt. 115.

The Court below determined the paper, created a *lien* in the nature of an *equitable mortgage.* In so doing the Court tested to the utmost point the tensile strength of the doctrine of equitable liens. The maxim of the law that " *equity regards substance rather than form* " to effectuate the real intent of the parties combines in its operation with the maxim " *equity regards that to be done, which was agreed to be done,*" to create the doctrine of equitable mortgages and liens. *Phelps Juridical Eq.*, sec. 197.

In pursuance of this principle, this Court has held a defectively executed mortgage, an informal mortgage, an unrecorded mortgage, to be *equitable liens.* It has also held *an agreement* in writing to give a mortgage on land to be an equitable lien. And a parol agreement to give a *chattel mortgage* on personal property to be an equitable lien. *6th Ward Building Association* v. *Wilson*, 41 Md. 506; *Stanhope* v. *Dodge*, 52 Md. 483; *Hoffman* v. *Gosnell, Trustee*, 75 Md. 577; *Alexander* v. *Ghiselin*, 5 Gill, 138. But to invoke this doctrine in a case like the present one, in which the paper was never intended to be recorded; when both parties had *fully performed* every act or deed it was intended by them should be performed, where from the very nature and form of the paper and the circumstances surrounding the transaction both parties intended the existence of this paper to remain a secret as far as all other persons dealing with McCauley & Co. were concerned, it is submitted (with the greatest respect for the Court below) opens,

grades and paves the way to dishonest dealing, discourages the honest tradesman, and places a premium upon indirect business methods. The execution of this paper was an effort, on the part of the appellant, to protect himself and at the same time enable McCauley to defraud his other creditors. Upon the theory that the paper constitutes an *equitable lien* upon the hoops mentioned therein, the Court could give it no greater force and effect than that given by the decree appealed from. *Pannell* v. *Farmers' Bank*, 7 H. & J. 202; *6th Ward Building Association* v. *Wilson*, 41 Md. 506; *Stanhope* v. *Dodge*, 52 Md. 483; *Hoffman & Flack* v. *Gosnell, Trustee*, 75 Md. 577.

BRISCOE, J., delivered the opinion of the Court.

In April, 1896, Daniel R. McCauley, who was then carrying on the business of barrel making, was indebted to the appellant, Textor, for materials purchased in the sum of $1,256.34. In order to secure this indebtedness and to obtain further credit from Textor, the following agreement was entered into between the parties :

" This agreement, made this second day of April, 1896, in Ellicott City, Baltimore County, State of Maryland, between D. R. McCauley of said city, in Baltimore County, of the first part, and Anton Textor, of the city of Baltimore, also in State of Maryland, of the second part : Witnesseth, that the said D. R. McCauley, of the first part, hereby gives the hoops which are now stored in the old stone foundry now owned by the C. A. Gambrill Manufacturing Company, said foundry is in Ellicott City, in Baltimore County, Maryland, as security for the payment of four notes, which are all dated April 2nd, 1896, drawn by John W. McCauley, favor of D. A. McCauley, say running for 40, 60, 90 days and four months, amounts $300.00, $300.00, $300.00 and $356.43, total, $1,256.34–100.

"That said Anton Textor hereby agrees to release his claim against said hoops upon the payment of the last aforesaid note, amount $365.43–100 ; that the storage of said lot of hoops is to be paid by the said McCauley.

"That said McCauley claims that there are about three hundred thousand hoops in the old stone foundry, that said lot of hoops to be the property of said Anton Textor in the event of any of said notes not being paid at their maturity.

"Witness our hands and seals this second day of April, 1896.

D. R. McCauley, [Seal].

"Witness:                    Anton Textor,    [Seal].

Geo. A. Nicklas."

The hoops mentioned in this contract were stored at the time of its execution in a building under the control of McCauley and remained in his possession without any delivery, actual or constructive, to the appellant, until December 9th, 1896, when McCauley in his own right and as surviving partner of the firm of D. R. McCauley & Co. executed a general assignment of all his property for the benefit of creditors to the appellee, W. L. Orr. This assignee took possession of the hoops referred to, then amounting to about 280,000, and the appellant filed a petition in the Court below, which had assumed jurisdiction over the administration of the trust, asking that the agreement be enforced as creating a first lien in his favor on these hoops, taken into possession by the trustee.

It is clear, we think, that the contract above set forth did not constitute a pledge of the hoops as security for the debt, because transfer of possession of the thing pledged to the pledgee or to a third party for his benefit is essential to the creation of a pledge. *Casey* v. *Cavaroc*, 96 U. S. 490; *Moors* v. *Reading*, 167 Mass. 322. In the case now before us, the hoops remained in the possession and under the control of McCauley.

Nor can the agreement be effective as a bill of sale or chattel mortgage, as against third parties, because it is not acknowledged and recorded as required by the Code, in all cases where the seller or mortgagor of chattels remains in possession. Art. 21, sec. 40 of Code.

It is obvious, however, that the intention of the parties

in this case was that the hoops described in the contract should be held by McCauley in trust as security for payment of his indebtedness to the appellant. The evidence shows that the appellant received verbal assurances from McCauley and his agent that they would not deal with or dispose of any of the hoops without his consent. The purpose of the parties was therefore in effect to mortgage the property and the way they adopted to effectuate their purpose, while invalid and insufficient in some respects was a binding contract between them. The law is well settled in this State that a promise to execute a mortgage of certain property or a defectively executed or unrecorded mortgage, creates an equitable lien upon the property, binding the conscience of the mortgagor and enforceable by a Court of Equity against him. *Dyson* v. *Simmons*, 48 Md. 207 ; *Carson* v. *Phelps*, 40 Md. 73 ; *Triebert* v. *Burgess*, 11 Md. 452. An unrecorded mortgage under our statute is good between the parties thereto and a pre-existing indebtedness is a sufficient consideration. *Code*, Art. 21, sec. 47 ; *Woods* v. *Fulton*, 4 H. & J. 327 ; *Alexander* v. *Ghiselin*, 5 Gill, 138.

While an equitable mortgage or lien, such as the one before us in this case, is not valid and enforceable against a *bona fide* purchaser or mortgagee for value without notice (*Ohio Life Ins. Co.* v. *Ross*, 2 Md. Chancery, 25 ; *Nelson* v. *Hagerstown Bank*, 27 Md. 51), yet it is enforceable not only against the mortgagor himself, but also against parties who claim under him as volunteers or without an equity superior to that of the creditor holding the lien. An assignee for the benefit of creditors is such a party. He is not a *bona fide* purchaser for value. He stands in the shoes of the assignor and can assert no claim to the property which the assignor could not. *Luckemyer, &c.,* v. *Seltz*, 61 Md. 315; *Tyler, Trustee,* v. *Abergh*, 65 Md. 18.

We are, therefore, of the opinion that the equitable lien in this case is enforceable, under the authorities here cited, against the assignee and against creditors of the assignor who were such at the time the agreement was made.

The assignee in this case so far represents subsequent creditors as to be entitled to contest for their benefit claims against the estate made to their prejudice. *6th Ward Bld. Asso.* v. *Wilson*, 41 Md. 506; *Mackintosh* v. *Corner*, 33 Md. 598.

We fully concur in the views expressed by the learned Court below, when it says : " That in distribution of the proceeds of the sale of said hoops, the claims secured by said agreement are entitled to priority over unsecured creditors existing at the time of the execution thereof; but with respect to general creditors whose debts were contracted after the date of said agreement without notice thereof, are entitled to come in *pari passu* with the claims mentioned therein. *Pannell* v. *Farmers' Bank*, 7 H. & J. 202; *Sixth Ward Building Asso.* v. *Wilson*, 41 Md. 506; *Stanhope* v. *Dodge*, 52 Md. 483 ; *Hoffman* v. *Flack*, 75 Md. 590."

The case of *Brown* v. *Deford & Co.*, 83 Md. 297, is relied on by the appellant to show that the lien of this equitable mortgage is enforceable against subsequent as well as pre-existing creditors. It will be seen in that case the property upon which the equitable lien was held to exist was purchased with the money of the creditor, and also that the lien was not enforced against subsequent creditors. Deford & Co. advanced the money to their debtor with which to purchase the property and it was expressly agreed that the hides so purchased were to be and remain the property of Deford & Co. We said in that case that the validity of the contract could not be sustained if in prejudice of subsequent creditors or purchasers in good faith without notice. This case is clearly distinguishable from Deford's case, and there is nothing in that case to support the contention made here by the appellant.

Finding no error in the decree appealed from, it will be affirmed with costs.

*Decree affirmed with costs.*