# UNITED STATES OF AMERICA *v.* EISINGER MILL & LUMBER COMPANY, INC. ET AL.

[No. 158, October Term, 1952.]

614

*Decided July 2, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Fred E. Youngman, Special Assistant to the Attorney General of the United States,* with whom were *H. Brian Holland, Assistant Attorney General, Ellis N. Slack* and *A. F. Prescott, Special Assistants to the Attorney General, Bernard J. Flynn, United States Attorney,* and *Paul C. Wolman, Jr., Assistant United States Attorney,* on the brief, for the appellant.

No brief and no appearance for the appellees.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from the ratification of an amended auditor's report preferring certain mechanic's liens over tax liens of the United States of America, (United States), appellant.

On July 17, 1951, Frank C. Bates, III, and Wayne E. Bates executed a deed of trust on a parcel of real estate to secure the payment of a note of $2,490.00. Default having occurred in the payment of this indebtedness the trustees on March 10, 1952, sold the property at public sale for $4,200.00 and on May 1, 1952, that sale was ratified by the court. This trustee's sale was made subject to a prior deed of trust in the amount of $8,302.13. The case having been submitted to the auditor, he filed his report. This report showed that after payment of costs and expenses and the balance due on the second deed of trust, which was foreclosed, there remained a balance of $1,119.50. In distributing this sum the auditor in his report allowed payment in full of the claim of the United States, appellant, in the amount of $951.08, filed by the Collector of Internal Revenue. He apportioned the balance of $168.42 among the mechanic's lien holders, recorded on the liens docket of Montgomery County. As stipulated these liens follow: A. Lien filed on February 6, 1952, by Edward F. Reifsnyder, et al., against Frank C. Bates, III, et al., in the amount of $495.00. B. Lien filed on January 26, 1952, by Eisinger Mill & Lumber Co., Inc., against Frank C. Bates, III, et al., in the amount of $3,010.27. C. Lien filed on January 19, 1952, by Eisinger Builders Supply Co., Inc., against Frank C. Bates, III, et al., in the amount of $414.52. It was stipulated that these liens were filed in accordance with the laws of the State of Maryland, no objection being made as to time of filing, for the amounts contained therein and that all of these liens were for material or labor furnished to the owners of the property and used in the construction of a house

thereon on the dates set forth in the liens by the owners who were the makers of the deed of trust which was foreclosed.

It was also stipulated and agreed that a Federal Tax Lien was filed December 28, 1951, in folio 43, Federal Tax Lien docket in the Office of the Clerk of the Circuit Court for Montgomery County, Maryland, said lien being dated December 17, 1951, against Frank C. Bates, III and Wayne E. Bates, trading as Bates Bros., in the total amount of $923.38, said total claim of $923.38 represented the following individual claims: Unpaid withholding taxes for April, May and June 1951 in the amount of $409.64. Withholding taxes for July, August and September 1951 in the amount of $513.74. The records of the Collector of Internal Revenue, Baltimore, Maryland, disclose that the assessment of $409.64 for unpaid withholding taxes for April, May and June 1951 was pursuant to an assessment list received by the Collector from the Commissioner of Internal Revenue on October 29, 1951; that the first demand upon the debtors for payment of that amount was made on October 31, 1951, and that second demand for payment on the debtors was made on November 30, 1951. The records of the Collector of Internal Revenue, Baltimore, Maryland, disclose that the assessment of $513.74 for unpaid withholding taxes for July, August and September 1951 was pursuant to an assessment list received by the Collector from the Commissioner of Internal Revenue on November 23, 1951; that the first demand upon the debtors for payment of that amount was made on November 30, 1951, and that second demand for payment on the debtors was made on December 28, 1951. It is stipulated and agreed that in this case the Bates, although insolvent debtors, were not bankrupt or persons who had made assignments for benefit of creditors. It is further stipulated and agreed that the second deed of trust foreclosed in this case was recorded prior to commencement of work on the house constructed on the property involved in the proceedings. The chancellor

held that the above mentioned mechanic's liens were entitled to priority, in payment of the sum of $1,119.50 aforesaid, over the unpaid tax liens of the United States. As a result thereof an amended report was filed by the auditor and a final order of ratification of that report was signed by the chancellor on November 21, 1952, and an appeal therefrom taken to this Court by the appellant on December 4, 1952.

The chancellor found that all labor and materials had been furnished, except cellotex sheathing in the amount of $136.08 furnished on November 21, 1951, covered by lien B above, and this labor and these materials had gone into the house on the property here in question before the lien of the appellant attached either on December 28, 1951, when the lien was filed, or on October 29 or November 23, 1951, when the Collector received the assessment list. We find nothing in the record to dispute these facts. We also agree with the chancellor that the mechanic's liens had not been "perfected", that is, filed as required by Code, 1951, Article 63, Sections 17 and 19, when the lien of the United States attached.

The chancellor held, although these liens had not been "perfected", that the unrecorded mechanic's liens were more than a potential right of contingent lien, but were an absolute lien on the specific property for six months after the work had been finished or the material furnished although no claim was filed, and claimant only loses his lien by failing to file it within the time limited. The chancellor cited as authority Code, 1951, Article 63, Section 23, which provides: "Every such debt shall be a lien until after the expiration of six months after the work has been finished or the materials furnished. although no claim has been filed therefor, but no longer, unless a claim shall be filed at or before the expiration of that period."

These tax liens of the United States arose by virtue of Title 26, Internal Revenue Code, Section 3670, which provides that, if any person who is liable to pay any

tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person. By Section 3671, unless another date is specifically provided by law, the lien shall arise at the time the assessment list was received by the collector and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time. An exception to the provision that the tax shall be a lien in favor of the appellant upon all property and rights to property, as provided in Section 3670, is that contained in Section 3672 which states in part: "(a) Such lien shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the collector * * *."

It is well established law that the meaning of a federal statute is ultimately for the Federal Courts to decide. *United States v. Security Trust & Savings Bank*, 340 U. S. 47, 71 S. Ct. 111, 95 L. Ed. 53; *United States v. Waddill, Holland & Flinn, Inc.*, 323 U. S. 353, 65 S. Ct. 304, 89 L. Ed. 294; *United States v. Gilbert Associates, Inc.*, 345 U. S. 361, 73 S. Ct. 701. The tax lien in this case was filed on December 28, 1951, before the mechanic's liens were filed. Mr. Justice Jackson said in his concurring opinion in *United States v. Security Trust & Savings Bank, supra*: "My conclusion from this history is that the statute excludes from the provisions of this secret lien those types of interests which it specifically included in the statute and no others."

The single question before us in this case is whether, under the Federal decisions, the recorded lien of the United States, appellant, for unpaid federal taxes is entitled to priority in payment over these mechanic's liens which were not recorded at the time of the recordation of the Federal lien.

At the time that the case of *United States v. Snyder*, 149 U. S. 210, 13 S. Ct. 846, 37 L. Ed. 705, was decided on May 1, 1893, the Internal Revenue Code contained no protection for third parties against the secret unrecorded tax lien of the United States. In that case the Supreme Court held that the tax lien of the United States was preferred over even an innocent purchaser for value, in good faith, and in ignorance of the secret tax assessment against the owner. Therefore "Congress enacted Section 3672 to meet the harsh condition created by the holding in *United States v. Snyder*, 149 U. S. 210, 13 S. Ct. 846, 37 L. Ed. 705, when federal liens were few, that a secret federal tax lien was good against a purchaser for value without notice." *United States v. Gilbert Associates, supra.* The amendment, aforesaid, excluding "mortgagees", "purchasers" and "judgment creditors", and the further amendment as the result of the decision in *United States v. Rosenfield*, D. C., 26 F. Supp. 433, excluding "pledgees" is persuasive that only those particular interests are excluded from this secret federal lien. See also *Detroit Bank v. United States*, 317 U. S. 329, 63 S. Ct. 297, 87 L. Ed. 304, and *Michigan v. United States*, 317 U. S. 338, 63 S. Ct. 302, 87 L. Ed. 312.

Code, 1951, Article 63, Section 28, provides for enforcement of the lien in equity. It is well settled in this State that a mechanic's lien is purely statutory. *McLaughlin v. Reinhart*, 54 Md. 71, 76. It was said by this Court in *Maryland Cas. Co. v. Lacios*, 121 Md. 686, at page 690, 89 A. 323, at page 324: "It is settled by numerous decisions of this Court, that the right to a mechanic's lien for labor, work done and materials furnished under the law, is not a vested right, but is a remedy only created by positive statutory enactment. The right to the lien depends entirely upon the statute, and the party seeking the remedy for the lien must come within the provisions of the statute." Also in the recent case of *Goldberg v. Ford*, 188 Md. 658, 53 A. 2d 665, it was pointed out "* * * where labor and material is

furnished by a sub-contractor for improvements to property, it is only by virtue of statute (Code, Art. 63) that a remedy is available. *Maryland Cas. Co. v. Lacios,* 121 Md. 686, 690, 89 A. 323. If recovery could be had in Equity in such a case, there would have been no need for such legislation." As above set forth these liens, although filed within the period of six months, had not been filed and recorded previous to the filing of the federal tax lien. Subsequent steps were necessary to proceed against the property as in *United States v. Security Trust & Savings Bank, supra.*

In *State v. Woodroof,* 253 Ala. 620, 46 So. 2d 553, it was held by the Supreme Court of Alabama that the state's claim for taxes was a specific and perfected lien and as such held priority over Section 3466 of the Revised Statutes of the United States, 31 U. S. C. A. Section 191, which provided that the debts due the United States should be first satisfied where the debtor was insolvent or bankrupt. In *United States v. Griffin-Moore Lumber Co.,* Supreme Court of Florida, 62 So. 2d 589, it was held that a mechanic's lien recorded prior to the recording of a federal tax lien was to be preferred over that federal tax lien. Apparently no petitions for *certiorari* were filed to the United States Supreme Court in these cases. This last decision was based on *In Re Taylorcraft Aviation Corporation,* 6 Cir., 168 F. 2d 808, and *Cranford Co., Inc. v. L. Leopold,* 189 Misc. 388, 70 N. Y. S. 2d 183, affirmed by the Court of Appeals of New York without opinion, 298 N. Y. 676, 82 N. E. 2d 580, hereafter discussed.

In *In Re Taylorcraft Aviation Corp.,* 168 F. 2d 808, 809, *supra,* decided June 1, 1948, relied on by the chancellor, Taylorcraft Aviation Corporation was adjudicated a bankrupt on April 25, 1947. On November 8, 1946, the United States filed a notice of tax lien as required by Section 3672, *supra.* Labor and materials had been furnished to the debtor beginning on August 6, 1946, and ending on September 22, 1946. An affidavit for mechanic's lien had been filed on November 20, 1946,

"which complied in all respects with the statutes of Ohio for obtaining a valid mechanic's lien upon the real property of the debtor, the affidavit for the lien being duly filed within sixty days after the last item was furnished." The Government conceded that it had no priority under the bankruptcy act. It claimed priority under Sections 3670 and 3671, *supra.* Circuit Judge Allen held in that case that as the bankruptcy act did not apply and as the mechanic's lien was a perfected lien on specific property on equitable considerations of unjust enrichment, the federal lien for taxes did not have priority over the mechanic's lien. This decision was questioned in *United States v. Sands,* 2 Cir., 174 F. 2d 384. We have been unable to find a petition to the Supreme Court of the United States for *certiorari* in this decision of the Circuit Court of Appeals and the case seems to be in conflict with *United States v. Security Trust & Savings Bank, supra,* decided November 13, 1950.

In *Michigan v. United States, supra,* the Supreme Court held that the unrecorded lien of the United States for estate taxes which arose at the date of death held priority over tax liens of the State of Michigan regardless of the construction of the state statutes by the state courts.

In *United States v. Security Trust & Savings Bank, supra,* Morrison sued on an unsecured note on October 17, 1946, and procured an attachment on four parcels of real estate owned by Stylianos. Morrison obtained judgment on April 24, 1947, and it was recorded on May 2, 1947. Meanwhile, on December 3, 5, and 10, 1946, the United States had filed notices of federal tax liens in the same office. The Superior Court of California held that Morrison's judgment was to be paid before the federal tax lien. The District Court of Appeals affirmed. The Supreme Court of California declined to hear the case, and *certiorari* was granted to the Supreme Court of the United States. That Court, in reversing and holding that the federal tax lien had priority over the attachments, said among

other things: "The effect of a lien in relation to a provision of federal law for the collection of debts owing the United States is always a federal question. Hence, although a state court's classification of a lien as specific and perfected is entitled to weight, it is subject to re-examination by this Court. * * * The attachment lien gives the attachment creditor no right to proceed against the property unless he gets a judgment within three years or within such extension as the statute provides. Numerous contingencies might arise that would prevent the attachment lien from ever becoming perfected by a judgment awarded and recorded. Thus the attachment lien is contingent or inchoate—merely a lis pendens notice that a right to perfect a lien exists. Nor can the doctrine of relation back—which by process of judicial reasoning merges the attachment lien in the judgment and relates the judgment lien back to the date of attachment—operate to destroy the realities of the situation. When the tax liens of the United States were recorded Morrison did not have a judgment lien. He had a mere 'caveat of a more perfect lien to come.' *New York v. Maclay*, 288 U. S. 290, 294, 77 L. Ed. 754, 757, 53 S. Ct. 323. * * * In cases involving a kindred matter, *i.e.*, the federal priority under Rev. Stat., Sec. 3466, it has never been held sufficient to defeat the federal priority merely to show a lien effective to protect the lienor against others than the Government, but contingent upon taking subsequent steps for enforcing it. *Illinois ex rel. Gordon v. Campbell, supra* (329 U. S. 362, 374, 91 L. Ed. 348, 357, 67 S. Ct. 340). If the purpose of the federal tax lien statute to insure prompt and certain collection of taxes due the United States from tax delinquents is to be fulfilled, a similar rule must prevail here."

What the Supreme Court considers as a specific lien is illustrated in the case of *United States v. Gilbert Associates, Inc., supra*, which involved among other things the priority of an *ad valorem* tax of the Town of Walpole, New Hampshire, levied against an insolvent,

Gilbert Associates, Inc., over the lien of the United States for employment, withholding and income taxes. In holding the United States had priority that Court said among other things: "We conclude that whatever the tax proceedings of the Town of Walpole may amount to for the purposes of the State of New Hampshire, they were not such proceedings as resulted in making the Town a judgment creditor within the meaning of Sec. 3672. While the Town was not a judgment creditor, it was the holder of a general lien on all the taxpayer's property. So was the United States a general lienholder on all the taxpayer's property. But since the taxpayer was insolvent, the United States claims the benefit of another statute to give it priority, Sec. 3466 of the Revised Statutes, 31 U. S. C. (1946 ed.) Sec. 191, the provisions of which are set forth in the margin. [Sec. 3466, *supra,* provided that the debts due the United States should be first satisfied where the debtor was insolvent or bankrupt]. As is usual in cases like this, the Town asserts that its lien is a perfected and specific lien which is impliedly excepted from this statute. This Court has never actually held that there is such an exception. Once again, we find it unnecessary to meet this issue because the lien asserted here does not raise the question. In claims of this type, 'specificity' requires that the lien be attached to certain property by reducing it to possession, on the theory that the United States has no claim against property no longer in the possession of the debtor. *Thelusson v. Smith,* 2 Wheat. [U. S.] 396, 4 L. Ed. 271. Until such possession, it remains a general lien. There is no ground for the contention here that the Town had perfected its lien by reducing the property to possession. The record reveals no such action. The mere attachment of the Town's lien before the recording of the federal lien does not, contrary to the holding of the Supreme Court of New Hampshire, give the Town priority over the United States. The taxpayer had not been divested by the Town of either title or possession. The Town,

therefore, had only a general, unperfected lien. *United States v. Waddill Co., supra; Illinois v. Campbell,* 329 U. S. 362, 370, 67 S. Ct. 340, 91 L. Ed. 348. Where the lien of the Town and that of the Federal Government are both general, and the taxpayer is insolvent, Sec. 3466 clearly awards priority to the United States. *United States v. Texas,* 314 U. S. 480, 488."

The chancellor was also of opinion that "the State of Maryland, by statute, has in substance placed the property in question in the position of a pledge, and the mechanics and suppliers, as pledgees, to the end that they will receive their wages and payment for what they supply, out of the very building that is erected through their labor and out of their materials." We cannot agree that the mechanic's liens here could be treated as "pledges". The learned chancellor relied upon the cases of *Franklin Insurance Co. v. Coates,* 14 Md. 285, in which this Court held that the material man between the time of the furnishing of the material and the filing of the mechanic's lien had a subsisting lien on the property and an insurable interest therein and upon *Sodini v. Winter,* 32 Md. 130, in which it was held that the mechanic's lien did not originate in contract but was a purely statutory enactment to be maintained and enforced to the extent and in the mode which the statute prescribed and under the statute by extending credit, the lien was not waived. It was said in the case of *Textor v. Orr,* 86 Md. 392,, at page 397, 38 A. 939: "It is clear, we think, that the contract above set forth did not constitute a pledge of the hoops as security for the debt, because transfer of possession of the thing pledged to the pledgee or to a third party for his benefit is essential to the creation of a pledge. *Casey v. Cavaroc,* 96 U. S. 490; *Moors v. Reading,* 167 Mass. 322. In the case now before us, the hoops remained in the possession and under the control of McCauley."

The mechanic's liens here could not be regarded as within the exception of "judgments". It was said in

*United States v. Gilbert Associates, supra*: "In this instance, we think Congress used the words 'judgment creditor' in Section 3672 in the usual, conventional sense of a judgment of a court of record, since all states have such courts." *United States v. Security Trust & Savings Bank, supra.*

There seems to be no question that the appellees are not "mortgagees". In *Grossman v. City of New York,* 188 Misc. 256, 66 N. Y. S. 2d 363, where a mechanic's lien was recorded before the filing of a federal lien for taxes, it was held that the assignee for value of the mechanic's lien was a "purchaser" under Section 3672 and that lien was perferred over the federal tax lien. *Cranford Co. v. L. Leopold & Co.,* 189 Misc. 388, 70 N. Y. S. 2d 183, *supra,* which followed, decided a similar question and based its decision primarily on *Grossman v. City of New York, supra.* These cases are not persuasive and apparently never reached a federal court. It is of course evident that the holder of an unrecorded mechanic's lien is not a purchaser in Maryland. *Van Bibber v. Reese,* 71 Md. 608, 615, 18 A. 892, 6 L. R. A. 332; *McHugh v. Martin,* 198 Md. 173, 179-180, 81 A. 2d 623, 626.

In deciding the question before us we must of course bear in mind what was said by Mr. Chief Justice Stone in *Michigan v. United States, supra*: "We do not stop to inquire whether this construction of the state statutes is the correct one, for we think the argument ignores the effect of a lien for federal taxes under the supremacy clause of the Constitution. The establishment of a tax lien by Congress is an exercise of its constitutional power 'to lay and collect taxes.' Article I, Section 8 of the Constitution. *United States v. Snyder,* 149 U. S. 210. And laws of Congress enacted pursuant to the Constitution are by Article 6 of the Constitution declared to be 'the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.' 'It is of the very nature and essence of

a lien, that no matter into whose hands the property goes, it passes cum onere.' *Burton v. Smith,* 13 Pet. 464, 483; *Rankin v. Scott,* 12 Wheat. 177, 179; *Howard v. Railway Co.,* 101 U. S. 837, 845. Hence it is not debatable that a tax lien imposed by a law of Congress, as we have held the present lien is imposed, cannot, without the consent of Congress, be displaced by later liens imposed by authority of any state law or judicial decision. *United States v. Snyder, supra; United States v. Greenville,* 118 F. 2d 963."

Under the authorities hereinbefore cited, we must hold that the recorded tax liens of the United States have priority in the payment of the funds over the subsequently recorded mechanic's liens in this case, and that the order ratifying the amended audit be reversed.

*Order reversed, with costs, and cause remanded for further proceedings.*